Cameron Hall; AZ Bar No. 025177
Michael Zoldan; AZ Bar No. 028128
**HALL & CHELLE LAW, LLC**
7077 E. Marilyn Rd. # 140
Scottsdale, AZ 85254
Tel: 480.422.4529
Fax: 602.513.7449
Cameron@Hall-Chelle.com
Michael@Hall-Chelle.com
Docketing@Hall-Chelle.com

Attorneys for Plaintiff
Kirk Nowak

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **Kirk Nowak,** | Case No._____ |
| Plaintiff, | |
| v. | **VERIFIED COMPLAINT** |
| **The Isles Homeowners' Association,** | **(Jury Trial Demanded)** |
| Defendant. | |

Plaintiff Kirk Nowak ("**Nowak**"), for his complaint against Defendant The Isles Homeowners' Association ("**TIA**"), hereby alleges and asserts as follows:

## PARTIES

1. Plaintiff Kirk Nowak ("Nowak") is, and at all times relevant hereto was, a resident of Lake Havasu, Arizona.

2. Defendant The Isles Homeowners' Association's ("TIA") principal place of business is located at 1401 N. McCulloch, Lake Havasu, Arizona.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction of Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims because they are so related to the claims in the action having original jurisdiction that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

5. Jurisdiction in this Court is proper.

6. Venue in this Court is proper.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

7. On or about February 20, 2009, Nowak was hired by TIA.

8. Nowak was employed as the Facilities Manager of "The Isles," a 66-unit luxury condominium development run by TIA.

9. Nowak's primary duty as the Facilities Manager was general maintenance of the property.

10. His additional duties included, inter alia, checking sewers, changing light bulbs, landscape maintenance, unloading cargo from out-of-state suppliers, cleaning the pool area, patrolling and removing debris from the beach, and performing various tasks at the request of guests and homeowners.

11. Nowak's duties did not include managing a customarily recognized department of The Isles.

12. Nowak's duties did not include customarily and regularly directing the work of any employees.

13. Nowak did not have the authority to hire or fire other employees.

14. The Isles' units are primarily owned by individuals who live outside of Arizona and seasonally rent their units to out-of-state guests on vacation.

15. The remaining owners live at the Isles on a full-time basis.

16. Nowak worked under the direction and supervision of Mike McCann ("McCann"), President of TIA.

17. In exchange for performing his duties as the Facilities Manager, Nowak was compensated on a monthly basis.

18. From on or about February 20, 2009 to on or about October 11, 2009, Nowak received approximately $1,400 per month as compensation.

19. From on or about October 12, 2009 to on or about October 14, 2010, Nowak received approximately $1,500 per month as compensation.

20. Part of Nowak's compensation also included lodging at The Isles for the duration of his employment.

21. Further, as part of his employment agreement with TIA, Nowak was supposed to have two days off per week.

22. Despite the agreement, however, Nowak was regularly and customarily required by McCann to work on his days off.

23. Indeed, throughout much of his employment with TIA, Nowak often worked seven days a week.

24. In addition, on or about August 2008, Nowak was required as a condition of his employment to sign a document stating that he would be "on call" seven days a week, 24 hours per day.

25. In fact, Nowak was required to be "on call" before ever signing such an agreement.

26. McCann regularly required Nowak to work at all hours of the night and often well before 6:00am.

27. In fact, The Isles' residents were given Nowak's home phone number – without his permission – and encouraged to call anytime they needed anything. Nowak was required to answer and respond to residents' calls, regardless of the time.

28. The telephone rang incessantly, at all hours of the night. In fact, the calls were so frequent that they regularly prevented Nowak and his family from sleeping.

29. Nowak was not even allowed to leave the property without giving his employer a minimum of two (and preferably four) weeks' notice.

30. In addition to working almost every day per week, Nowak also worked extremely long hours.

31. In fact, McCann commonly required Nowak to work 10 to 14 hour days on his "days on."

32. Nowak's long work days were often worked consecutively, causing him to work in excess of 40 hours per week.

33. Nowak was never paid overtime compensation for the hours he worked in excess of 40 hours per week.

34. Throughout much of 2010, Nowak and his family became overwhelmed by the long hours and grueling work schedule that was required by McCann.

35. In or about August 2010, Nowak attended a TIA board meeting to discuss the concerns he had about his job and the compensation related thereto.

36. Specifically, he expressed concern about being required to work in excess of 40 hours per week without being paid overtime compensation.

37. In response, TIA retaliated against Nowak by terminating his employment on or about October 14, 2010.

## COUNT I
## FAILURE TO PAY OVERTIME WAGES

38. Plaintiff reasserts and realleges each and every allegation in this complaint as if fully set forth herein.

39. Pursuant to the Fair Labor Standards Act ("FLSA") an employer must pay overtime wages of at least 1½ the regular wage for any hours worked in excess of 40 hours in a work week, unless the employee is a qualified exempt employee.

40. At all times and for all purposes herein relevant, Nowak was:

41. TIA's "employee" within the meaning and scope of 29 U.S.C. § 203;

42. "engaged in commerce" within the meaning and scope of 29 U.S.C. § 207(a); and

43. entitled to the protections afforded by, inter alia, 29 U.S.C. §§ 206 and 207 relating to minimum wages and maximum hours, respectively.

44. At all times and for all purposes herein relevant, TIA was:

45. Nowak's "employer" within the meaning and scope of 29 U.S.C. § 203(d);

46. "engaged in commerce" within the meaning and scope of 29 U.S.C. § 206(a); and

47. required by law to comply with 29 U.S.C. §§ 206 and 207 relating to minimum wages and maximum hours, respectively.

48. TIA willfully failed to pay NOWAK overtime compensation.

49. As a result, TIA is liable to Nowak for overtime compensation under the FLSA.

50. Pursuant to FLSA § 216(b), Nowak is entitled to the amount of wages due and owing him doubled as liquidated damages for the willful failure to pay overtime and attorneys' fees and costs.

## COUNT II
## FLSA RETALIATION

51. Plaintiff reasserts and realleges each and every allegation in this complaint as if fully set forth herein.

52. Pursuant to 29 U.S.C. § 215(a)(3) of the FLSA, employers are prohibited from discharging or discriminating against any person because he or she filed a complaint or instituted a proceeding under the FLSA and/or engaged in other protected activity.

53. Protected activity includes filing an internal complaint by the employee.

54. Throughout his employment with TIA, Nowak raised concerns regarding the hours he was required to work, and his compensation therefore, to McCann.

55. On or about August 22, 2010, Nowak again raised such concerns, this time during a TIA Board Meeting.

56. In fact, when raising his concerns to the Board, Nowak specifically mentioned the FLSA by name, and noted that he was not being paid pursuant to its requirements.

57. Almost immediately thereafter, on or about October 14, 2010, Nowak was terminated by TIA despite being an exemplary employee.

58. Nowak's termination was in retaliation for the complaint he made at the Board meeting.

59. TIA's violation of the FLSA was willful.

60. Nowak suffered emotional distress due to his termination in violation of the FLSA.

61. Pursuant to § 216, Nowak is entitled to legal or equitable relief including, without limitation, employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

62. Nowak is also entitled to compensatory damages for emotional distress and punitive damages.

## COUNT III
## BREACH OF CONTRACT

63. Plaintiff reasserts and realleges each and every allegation in this complaint as if fully set forth herein.

64. Nowak had valid, binding and enforceable written contracts with TIA, including but not limited to the agreement to have two "days off" a week and the agreement to be on call seven days a week, 24 hours per day.

65. Nowak complied with all of his obligations under the contracts.

66. TIA materially breached its express and/or implied contractual obligations owed to Plaintiff as alleged elsewhere herein, including but not limited to, forcing Plaintiff to work on his "days off," in violation of the FLSA and in violation of his contracts.

67. Nowak has been substantially and materially harmed by Defendant's breach of the contracts.

68. Nowak is entitled to all of the damages he suffered as a result of Defendant's breach of contract, including but not limited to his compensatory damages, costs, and attorneys' fees, and to all of the damages he is entitled to under the FLSA as described herein.

**COUNT IV**
**BREACH OF THE IMPLIED COVENANT OF**
**GOOD FAITH & FAIR DEALING**

69. Plaintiff reasserts and realleges each and every allegation in this complaint as if fully set forth herein.

70. The contracts described herein, by application of Arizona law, include an implied covenant of good faith and fair dealing.

71. The implied warranty or covenant of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement.

72. TIA breached its obligation of good faith and fair dealing by, inter alia, forcing Nowak to work on his days off, and forcing him to be on call 24 hours per day, seven days a week.

73. Nowak has been substantially and materially harmed by Defendant's breach of said covenant, in a sum to be determined by a jury at trial.

74. Nowak is also entitled to recover damages for all compensatory and special damages caused by or resulting from Defendant's breach of said covenant, including recovery of his attorneys' fees and costs in accordance with A.R.S. § 12-341.01.

## CONCLUSION AND PRAYER FOR RELIEF

Wherefore, Plaintiff prays that this Court order such relief as is necessary to make him whole, including, without limitation:

A. An award of damages in an amount to be proven at trial;

B. An award of compensatory and punitive damages in an amount to be proven at trial;

C. The costs of this litigation, including attorney's fees, pursuant to FLSA § 216, A.R.S. § 12-341 and A.R.S. § 12-341.01;

D. Liquidated damages of double the overtime/waiting time wages due pursuant to FLSA § 216;

E. Pre and Post-judgment interest; and

F. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

1  RESPECTFULLY SUBMITTED on February 8, 2012.

**HALL & CHELLE LAW, LLC**

By: /s/ Michael Zoldan
  7077 E. Marilyn Rd. # 140
  Scottsdale, AZ 85254
  Attorneys for Plaintiff
  Kirk Nowak

## VERIFICATION

Plaintiff Kirk Nowak declares under penalty of perjury that he has read the foregoing Verified Complaint and is familiar with the contents thereof. The matters asserted therein are true and correct based on his own personal knowledge, except as to those matters stated upon information and belief, and as to those matters, he believes them to be true.

DATED February 2, 2012.

*[signature]*
KIRK NOWAK